[No. 20613.  In Bank. — May 3, 1890.]

THE PEOPLE, RESPONDENT, *v.* T. M. MAURITZEN, APPELLANT.

CRIMINAL LAW — OBTAINING PROPERTY UNDER FALSE PRETENSES — PRETENSE NOT RELIED UPON — SALE UPON CREDIT. — When a defendant is charged with the crime of obtaining horses under false and fraudulent pretenses, the offense is not made out if it appears that the horses were sold to the defendant on credit, and that the vendor took a note from defendant for the price, and relied on the sale of the horses by the defendant for his pay, although defendant may have falsely represented that he had money in bank equal to the price of the horses.

ID. — IMPROPER INSTRUCTION — PROMISSORY NOTE — PROOF OF CONTENTS — SECONDARY EVIDENCE. — When the giving of a note and its contents are proved by witnesses without objection, the note is as much in evidence as if it had been proved by the production of the written instrument itself; and it is prejudicial error in such case to instruct the jury that the note is not in evidence before them.

APPEAL from a judgment of the Superior Court of Napa County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*E. D. Ham,* for Appellant.

*Attorney-General Johnson,* for Respondent.

McFARLAND, J.—The defendant was convicted under section 532 of the Penal Code of the crime of obtaining three horses from one G. W. Hill by false and fraudulent pretenses. The false pretense alleged was representing to said Hill that the defendant had four hundred dollars on deposit in a certain bank in Napa City when the horses were purchased by defendant of Hill. The evidence is undisputed that, while defendant stated that he had the four hundred dollars in bank, he also told Hill that he did not want to use that money; that Hill must give him a week's time to pay for the horses; that he would take the horses to San Francisco and sell them, and wanted to make the turn and get the money from the sale at the latter place to pay Hill. Thereupon he paid Hill twenty dollars in cash, and gave him his (defendant's) note for the balance of the purchase-money, — $380, — payable in a week. Defendant then took the horses to San Francisco. As Gardiner, one of the witnesses for the prosecution, and one of the owners of the horses, testified, defendant was to pay for the horses out of the money derived from the sale of the horses, and was to have one week's time in which to sell the horses and pay for the same." This was on the 17th of June, 1889; but on June 20th, — before one half of the week had expired,

— defendant was arrested at San Francisco on this present charge. He still had the horses, and when arrested gave them back to Hill, and also gave him his note for Hill's expenses in taking the horses back to Napa City.

This evidence makes a very slender case of the crime charged, at best; and we think that the court misled the jury in answer to their inquiry about the note given by defendant to Hill on the purchase of the horses. The court had correctly instructed the jury that "if said Hill sold horses on credit, and took a note for the same, and relied on the sale of the horses by defendant for his pay, you should find the defendant not guilty, although he may have falsely told the said Hill that he had four hundred dollars in the bank of Seely & Bickford." But after the jury had retired, they returned into court, "and through their foreman asked the court if the note given by the defendant to Hill for the purchase of the horses was in evidence before them. The court replied that the note was not in evidence before them." This was clearly error; for the giving of the note and its contents were distinctly proven by the witnesses, *without objection*, and was as much *in evidence* before the jury as if it had been proven by the production of the written instrument itself. And that the error was material is self-evident, without even considering the fact that the jury specially made inquiry on the subject.

Judgment and order denying a new trial reversed, and cause remanded for new trial.

Beatty, C. J., concurred.

Thornton, J., concurring. — I agree in what is said by Justice McFarland.

I am of opinion that the court erred in refusing the first and third instructions asked by defendant.

I am further of opinion that the verdict is contrary to the evidence. I cannot perceive how any man of ordi-

nary intelligence could, on the testimony in the record, fail to entertain a reasonable doubt of defendant's guilt.

The judgment should be reversed, and cause remanded for a new trial.

PATERSON, J., concurring.—I concur on the ground that the evidence does not support the verdict. Mr. Gardiner, one of the owners, testified: " Mr. Hill would· not have accepted the note and twenty dollars for the horses if I had not been satisfied. The money the defendant stated he had in the bank of Seely & Bickford was not to be used in paying for the horses. *Defendant was to pay for said horses out of the money derived from the sale of the horses, and was to have one week's time in which to sell ·the horses and pay for the same. The credit of seven days on said note was to enable him to sell the horses and raise the money and pay for the horses. Defendant was to pay out of the money the horses brought.*" Mr. Hill, the owner of the horses, and who personally negotiated the sale, testified that the defendant told him he did not have the money to spare then to pay for the horses, but if he would give him a week's time he would pay for them. Defendant was arrested before the expiration of the time given him to sell and pay for them. It is difficult to see how any reliance could have been placed upon a fund which, if it existed at the time, could not be *spared* to pay for the horses. There was no pretense that defendant would use any of the four hundred dollars in payment of the purchase price. The owners certainly understood that the money defendant claimed to have could not be applied in payment of the purchase price, and that a credit of a week would be necessary. If the money defendant represented he had on hand was to be applied necessarily to other debts, and not in payment of the purchase price, how can reliance be predicated upon any statement in regard to it? There is nothing in the evidence to show that the defendant is insolvent. It is in

evidence, and not contradicted, that he owned a store in Napa, where he purchased the horses, though its value is not stated.

Mr. Hill now thinks, no doubt, that the statement (as to the money in bank) did induce him to part with the horses, but the testimony of himself and partner, of the defendant, and the circumstances surrounding the transaction, all taken together, show that all parties understood at the time that defendant was to have a week in which to sell the horses and pay the balance of the purchase price out of the proceeds, and that the statement about the four hundred dollars deposit cut little or no figure in the transaction.